USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/10/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LAIDLAW & COMPANY (UK) LTD.

Petitioner,

v.

JOHN MICHAEL MARINACCIO

Respondent.

---

No. 19-CV-5246 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Petitioner Laidlaw & Company (UK) Ltd. ("Laidlaw" or "Petitioner") commenced this action to partially vacate an arbitration award (the "Award"), which denied Laidlaw's claims against John Michael Marinaccio ("Marinaccio" or "Respondent"). Marinaccio, proceeding *pro se*, cross-petitioned to confirm the Award.[1] For the reasons that follow, Laidlaw's petition to partially vacate is denied, and Marinaccio's cross-petition to confirm is granted.

## BACKGROUND[2]

Laidlaw is a foreign corporation and a registered broker-dealer with its United States headquarters and principal place of business in New York. Pet., Dkt. 1, ¶ 6. Marinaccio is a resident of New Jersey and a former employee of Laidlaw. Pet. ¶¶ 2, 7-8.

On approximately June 15, 2017, Marinaccio resigned from Laidlaw and began working for Joseph Gunnar & Co., LLC ("JGUN"), a Laidlaw competitor. Pet. ¶ 2; Pet. Ex. Q ("Hearing

---

[1] While at the time that Laidlaw filed its petition and Marinaccio filed its cross-petition, Marinaccio was proceeding *pro se*, as of the date of this Opinion, he is represented by counsel. *See* Dkt. 29.
[2] The facts in this section are drawn from the parties' respective petitions, their supporting papers, and the exhibits attached thereto, and are uncontested unless otherwise noted.

Tr.") at 19:11-13, 38:4-9.[3] On June 30, 2017, in response to an Order to Show Cause filed by Laidlaw, the Supreme Court of New York issued a temporary restraining order against Marinaccio and JGUN restraining both parties from soliciting Laidlaw's customers or using Laidlaw's confidential information, including any of Laidlaw's customer lists. *See* Pet. ¶ 11; *see also* Pet. Ex. C (the "TRO").

The parties were subsequently compelled to arbitrate the matter pursuant to their customer agreements and their registration statuses with FINRA. *See* Pet. Ex. I (Amended Statement of Claim) ¶ 8; *see also* Pet. ¶ 13. On September 12, 2017, as part of the proceedings before the FINRA arbitration panel (the "Panel"), the parties stipulated to an injunction that substantially extended the TRO through the course of the FINRA arbitration. *See* Pet. ¶ 14; Pet. Ex. F (Stipulation Continuing Restraints). The parties also stipulated that Marinaccio had taken certain information from Laidlaw and had returned all such information, that neither Marinaccio nor JGUN retained such information, and that, pending final resolution of the arbitration, Marinaccio and JGUN would only solicit customers subject to certain agreed limitations. *See* Pet. Ex. F. By October 2017, Marinaccio had left JGUN and started working at First Standard Financial Company LLC ("FSFC"), another Laidlaw competitor. *See* Resp't Mot., Dkt. 17, Ex. F (Dec. 15, 2017 Letter).[4]

On October 23, 2017, JGUN and Marinaccio filed a Joint Answer denying Laidlaw's Statement of Claim. *See* Pet. ¶ 15; Pet. Ex. G (Joint Answer). In the same filing, Marinaccio also asserted several counterclaims against Laidlaw, including a counterclaim for an unpaid bonus. *See*

---

[3] JGUN is not a party to the instant proceeding because Laidlaw is not seeking to vacate or modify any portion of the Award as to JGUN. *See* Pet. ¶ 3.
[4] Marinaccio was terminated from FSFC on December 12, 2017. *See* Hearing Tr. at 36:5-20, 39:12. By February 2018, he had started working at a fourth brokerage firm, Worden Capital Management LLC. *See id.* at 102, 134; *see also* Resp't Mot. Ex. F.

2

Pet. Ex. G (Joint Answer) at 7-13. The Panel subsequently allowed Laidlaw to file an Amended Statement of Claim. *See* Pet. ¶¶ 16-17; Pet. Ex. I (Amended Statement of Claim). In its Amended Statement of Claim, Laidlaw asserted various claims against Marinaccio, including, as relevant here, that he took, retained, and used Laidlaw's proprietary information and that he made improper trades while at Laidlaw that resulted in over $77,000 in damages. *See* Pet. ¶ 17; Dkt. 1-1 ("Carmel Decl.") ¶ 10; Pet. Ex. I (Amended Statement of Claim) at 8-16. On August 8, 2018, the Panel ordered, among other things, that Marinaccio "answer the statement of claim/complaint in this matter, and produce all documents and materials responsive to [Laidlaw's] discovery requests" by August 15, 2018, and set the arbitration hearing for December 12 and 13, 2018. *See* Pet. Ex. K (Aug. 8, 2018 Order). Marinaccio filed an Answer to the Amended Statement of Claim on August 15, 2018. *See* Pet. Ex. L (Amended Answer).

On November 23, 2018, the Panel ordered FSFC to produce certain documents to the parties. *See* Pet. ¶ 28; Pet. Ex. N (Nov. 23, 2018 Order). Laidlaw then learned that FSFC, on the advice of counsel, had deleted a client list and "all of the documents in [sic] which Marinaccio brought over to [FSFC] which contained confidential client information in violation of Reg S-P," but had previously provided these documents to FINRA Enforcement. Pet. Ex. O (Nov. 30, 2018 Letter) at 1. On November 30, 2018, Laidlaw requested an order compelling production of the documents related to Marinaccio that FSFC had given to FINRA Enforcement as well as an adjournment to allow time for FINRA Enforcement to comply with the proposed order. Pet. ¶¶ 29-30; Pet. Ex O (Nov. 30, 2018 Letter). The Panel denied Laidlaw's requests without explanation. Pet. ¶ 31; Pet. Ex. P (Dec. 4, 2018 Order).

The arbitration hearing was held on December 12 and 13, 2018, as scheduled. *See* Pet. ¶ 31. On the first day of the hearing, Laidlaw called Marinaccio to the stand and questioned him at

3

length. *See* Hearing Tr. at 35-99. On the second day of the hearing, after Laidlaw and JGUN had rested their cases, Marinaccio, representing himself *pro se*, took the stand on his own behalf.[5] *See id.* at 115-137. After Marinaccio testified on his own behalf, Laidlaw began to cross-examine him. *See id.* at 137-141. During that cross-examination, the Panel clarified that Marinaccio's counterclaim regarding an unpaid bonus was not properly before it. *See id.* at 143:2-20.[6] Upon learning that his counterclaim was not properly before the Panel, Marinaccio had an "emotional outburst, in which he ranted about his life and family being in shambles," "turned to the window behind him, and threatened to commit suicide." Pet. ¶ 36; *see also* Hearing Tr. at 144-147. As a result, the Chair of the Panel stopped the proceeding, explained that they were going to take a break and go off the record, and instructed "everyone but the [P]anel" to "clear the room." Hearing Tr. at 146:22-147:2. The Panel then cancelled the hearing for the remainder of the day. *See* Pet. ¶ 37.

Following these events, the Panel notified the parties that the hearing had concluded and requested a two-page closing summation from each party. Pet. ¶ 38. On January 22, 2019, the parties submitted their summations. *See* Pet. ¶ 39; Pet. Ex. S ("Laidlaw Summation"); Resp't Decl., Dkt. 16, Ex. B ("Marinaccio Summation").

On April 12, 2019, the Panel issued the Award, denying all of Laidlaw's claims and denying Marinaccio's counterclaim. Pet. ¶ 40; Pet. Ex. A (Award) at 3. The Award was served on Laidlaw on May 7, 2019. Pet. ¶ 40.

---

[5] Marinaccio had previously been represented by John E. Lawlor, who also represented JGUN. *See* Pet. Ex. G. Lawlor was later relieved as counsel for Marinaccio, but continued to represent JGUN. *See* Hearing Tr. at 142:19-143:15.

[6] Marinaccio asserted his unpaid bonus counterclaim in his initial Answer. *See* Pet. Ex. G (Joint Answer) at 7-13. However, he did not re-state this counterclaim in his Amended Answer. *See* Pet. Ex. L (Amended Answer). During the hearing, the Chair made clear that the counterclaim was therefore not before the Panel. *See* Hearing Tr. at 142:12-16, 143:2-20. In the Award, the Panel noted that, "[a]t the close of the hearing, Respondent Marinaccio requested damages on his claim for an unpaid bonus," and ruled that "Marinaccio's Counterclaim is denied in its entirety." Pet. Ex. A (Award) at 3.

Laidlaw filed the instant petition to partially vacate the Award on June 4, 2019. Dkt. 1. Marinaccio filed his opposition to Laidlaw's petition and cross-petition to confirm the Award on August 5, 2019. Dkts. 15-17. Laidlaw filed a reply on August 12, 2019. Dkt. 19.

## LEGAL STANDARDS

"The role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the [Federal Arbitration Act].'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) (alteration in original) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)). This "narrowly limited" review "promotes the 'twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation.'" *Id.* (quoting *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009)). The Second Circuit has thus "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007).

Pursuant to the Federal Arbitration Act ("FAA"), there are four statutory grounds for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also Tempo Shain Corp.*, 120 F.3d at 19 ("Federal courts may vacate an arbitration award only in limited circumstances as proscribed by section 10(a) of the [FAA]."). In addition to the grounds set forth in the FAA, "the court may set aside an arbitration award if it was

5

rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (citation omitted); *see also Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (discussing but not resolving whether the "manifest disregard" paradigm is an independent ground for judicial review or a "judicial gloss" on the enumerated grounds in section 10(a)). The party moving to vacate an award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (citation omitted); *see also Kolel Beth*, 729 F.3d at 103-04 ("[T]he burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'") (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)).

In evaluating a petition to confirm or vacate, the Court is mindful that "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case. . . . Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citations omitted). "[U]nless [an] award is vacated, modified, or corrected," an arbitration award "must" be confirmed upon a party's petition to confirm. 9 U.S.C. § 9; *see also D.H. Blair & Co.*, 462 F.3d at 110. Accordingly, in most cases, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted). Moreover, because Marinaccio was proceeding *pro se* when he filed his cross-petition, the Court reads his submissions "to raise the strongest arguments that [they] suggest[]." *Sheridan v. Mariuz*, No. 07 Civ. 3313 (SCR)(LMS), 2009 WL 920431, at *3 (S.D.N.Y. Apr. 6, 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Norton v. Sam's Club*,

6

145 F.3d 114, 118 n.1 (2d Cir. 1998) (explaining that courts have a "duty to construe liberally papers filed by *pro se* litigants"); *McCarthy v. Smith Barney Inc.*, 58 F. Supp. 2d 288, 292 n.3 (S.D.N.Y. 1999) (noting, in reviewing *pro se* petitioner's motion to vacate an arbitration award, "that *pro se* pleadings and motion papers should be liberally construed to raise the strongest arguments they suggest") (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## DISCUSSION

### I. VACATUR OR CONFIRMATION OF THE AWARD

#### A. Laidlaw's Petition to Partially Vacate the Award

Laidlaw primarily argues that that Award should be vacated under 9 U.S.C. § 10(a)(3) because the Panel engaged in "misconduct" by prematurely ending the hearing and thereby "refusing to hear evidence pertinent and material to the controversy." *See* Pet. ¶¶ 4-5, 44-45; *see also* Pet. ¶¶ 48-50; Laidlaw Mot., Dkt. 1-21, at 2, 8-11. In its Petition and supporting motion, Laidlaw also makes passing references to vacatur under 9 U.S.C. § 10(a)(4) and because of the Panel's purported "manifest disregard of the law." *See* Pet. ¶¶ 42-43; Laidlaw Mot. at 8, 10. The Court addresses each argument in turn.

i. **Section 10(a)(3)**

Laidlaw argues that the Award should be vacated because the Panel "prematurely concluded the hearing following Marinaccio's emotional outburst and inexplicably never resumed it, limiting further evidentiary submissions to a two page summation and improperly curtailing Laidlaw's cross-examination of Marinaccio." Pet. ¶ 44. In particular, Laidlaw asserts that "had the Panel not cut the hearing short, [it] had intended to present evidence concerning . . . Marinaccio's unauthorized day trading . . . and Laidlaw's internal investigation regarding [the] same." Carmel Decl. ¶ 35. Laidlaw also asserts that it had "intended to conduct further cross-

examination of Marinaccio" regarding his "unauthorized day trading" and his "possession of Laidlaw confidential documents and customer lists." *Id.* ¶ 36. Laidlaw contends that, "because it could not cross-examine Marinaccio in support of its claims [on possession of confidential information and unauthorized day trading], [it] was not provided with the opportunity to be heard in a meaningful manner, or a hearing on all of the relevant evidence—the minimal requirements of due process." Laidlaw Mot. at 9-10. According to Laidlaw, the Panel thus committed misconduct under Section 10(a)(3) by depriving it of "due process and a fair hearing." *Id.* at 9.

Vacatur pursuant to Section 10(a)(3) is warranted only where "fundamental fairness is violated." *Tempo Shain Corp.*, 120 F.3d at 20. Arbitrators are thus afforded great deference in their evidentiary determinations, and a court's review of such decisions is limited to "determining whether the procedure was fundamentally unfair." *Id.* (citation omitted). "It is well settled that procedural questions that arise during arbitration, such as which witnesses to hear and which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987)); *see also Kolel Beth*, 729 F.3d at 107 ("Arbitrators have substantial discretion to admit or exclude evidence.") (quoting *LJL 33rd Street Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013)); *Matthew v. Papua New Guinea*, No. 09 Civ. 3851 (LTS), 2009 WL 4788155, at *2 (S.D.N.Y. Dec. 9, 2009) ("[A]n arbitrator's erroneous refusal to hear 'pertinent and material' evidence will only provide a basis for vacatur if the decision deprives a party of a fundamentally fair arbitration process.") (citation omitted), *aff'd*, 398 F. App'x 646 (2d Cir. 2010) (summary order). While arbitrators "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument,"

they are nonetheless "not required to hear all the evidence proffered by a party" and "need not follow all the niceties observed by the federal courts." *Tempo Shain Corp.*, 120 F.3d at 20 (citations omitted); *see also Matthew*, 2009 WL 4788155, at *2 ("[E]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.") (citation omitted). The FINRA Rules likewise provide the arbitration panel with significant discretion regarding evidentiary rulings and procedural decisions. *See, e.g.*, FINRA Rule 13604 ("The panel will decide what evidence to admit."); FINRA Rule 13607 ("The panel has the discretion to vary the order in which the hearing is conducted, provided that each party is given a fair opportunity to present its case."); FINRA Rule 13608(a) ("The panel will decide when the record is closed.").

Laidlaw has failed to demonstrate that the arbitration proceeding was "fundamentally unfair," and it therefore fails to "meet the high threshold in order to warrant vacating the [A]ward" under Section 10(a)(3). *Kolel Beth*, 729 F.3d at 107. As noted, Laidlaw contends that the Panel's actions deprived it of the opportunity to present "the full spectrum" of evidence on Marinaccio's alleged unauthorized day trading and unlawful possession and use of Laidlaw's confidential information, including its customer lists. *See* Pet. ¶¶ 45, 48. The record before the Court, however, shows that Laidlaw did in fact present evidence and argument on these topics, and that the "curtailing" of its cross-examination of Marinaccio, *see* Pet. ¶ 44, did not render the proceeding fundamentally unfair.

Laidlaw was given the full opportunity to present its direct case. Among other things, Laidlaw presented evidence of its claims regarding customer lists when it examined Marinaccio

9

on direct examination during the first day of the hearing.[7] *See* Hearing Tr. at 35-64; *see also* Carmel Decl. ¶ 35-37 (stating that Laidlaw "intended to conduct *further* cross-examination of Marinaccio with respect to his unauthorized day trading" and "possession of . . . customer lists") (emphasis added). Laidlaw also stated that it expected to complete its examination of Marinaccio by the end of the first day and, as to the unauthorized trading claims, that it would present its evidence through a different witness. *See* Hearing Tr. at 64-65. Furthermore, on the second day of the hearing, after Marinaccio testified on his own behalf, Laidlaw began its cross-examination by telling the Chair of the Panel, "I actually don't have all that much," *id.* at 137:9-10, before proceeding to question Marinaccio again, *id.* at 138-140. By this point, Laidlaw had also already introduced evidence of its internal investigation that had "determined that Marinaccio was responsible for [the] unauthorized trading." Laidlaw Summation at 2 (stating that Laidlaw National Branch Manager Alex Shtaynberger's testimony confirmed that the investigation "determined that Marinaccio was responsible for this unauthorized trading"). As Laidlaw summarized in its summation, the testimony and evidence presented in the proceeding—including Marinaccio's own "inconsistent" testimony "when pressed by [Laidlaw's counsel] and the Chair on this issue"—supported its unauthorized trading claims. *Id.* at 2; *see also* Hearing Tr. at 138-141. Contrary to Laidlaw's suggestion, it was not entitled to present "the full spectrum" of evidence. Pet. ¶ 45; *see Tempo Shain Corp.*, 120 F.3d at 20. The Panel had wide discretion in deciding "which witnesses to hear and which evidence to receive or exclude." *Nat'l Football*

---

[7] The hearing transcript submitted by Laidlaw is incomplete. *See* Pet. Ex. Q. The transcript appears to be missing, at a minimum, significant portions of the first day of the hearing, including Laidlaw's initial direct examination of Marinaccio, and the majority of the second day, including the examination of multiple witnesses by the parties. *See id.* In any event, the Court need not review the entirety of the proceedings in order to determine that they were not "fundamentally unfair." *See Kolel Beth*, 729 F.3d at 107 ("In the instant case, there is no transcript or recording of the arbitration proceedings and the parties do not agree on multiple disputed facts. Without a more detailed record of the proceeding, the party seeking vacatur cannot meet the high threshold in order to warrant vacating the award.").

*League*, 820 F.3d at 545. Based on the Court's review, the Panel did not violate fundamental fairness or deny Laidlaw due process in doing so.[8]

Notably, Laidlaw also fails to identify exactly what additional information or evidence it would have elicited from Marinaccio regarding its claims had the hearing not ended when it did. Following the hearing, both parties were given the opportunity to submit final written summations. *See* Laidlaw Summation; Marinaccio Summation. In its summation, Laidlaw did not raise any arguments about the Panel's purported misconduct in prematurely ending the hearing or refusing to hear any evidence. In fact, Laidlaw characterized the evidence supporting its theft claims as "frankly undisputed." *See* Laidlaw Summation at 1. Laidlaw also referenced Marinaccio's hearing testimony and did not express any need for further examination of Marinaccio or any other witness at that time. *See id.* at 2 ("Mr. Shtaynberger testified that Marinaccio was subsequently confronted by Laidlaw regarding [unauthorized trading]. Notably, when pressed . . . on this issue, Marinaccio's testimony was inconsistent to say the least."). That Laidlaw did not raise any argument about the nature of the arbitration proceeding, the evidence presented, or the way in which the hearing ended at that point bolsters the conclusion that the proceeding was not fundamentally unfair.

In short, Laidlaw has failed to demonstrate that the Panel engaged in any "misconduct" within the meaning of Section 10(a)(3). The Panel's decision to end the hearing when it did—on the second day of what was intended to be a two day hearing, *see* Pet. Ex. K (Aug. 8, 2018 Order); Hearing Tr. at 69:12-14—and to conclude the proceeding by requesting and receiving written

---

[8] The Court also notes that, based on the circumstances present here, the Panel could have reasonably concluded that further examination of Marinaccio would have been cumulative and/or unhelpful, regardless of Marinaccio's emotional state at the end of the second day. Indeed, Laidlaw's own conduct supports this finding, as it had rested its case before Marinaccio began to testify on his own behalf on the second day. *See* Hearing Tr. at 115:8-9. For these reasons, among others, ending the hearing at that point on the second day did not violate fundamental fairness.

summations from each party, is specifically contemplated by the applicable FINRA rules[9] and, in any event, does not amount to "fundamental unfairness and misconduct sufficient to vacate the arbitration [A]ward pursuant to Section 10(a)(3)." *Tempo Shain Corp.*, 120 F.3d at 18. As the "arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case,'" *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1999)), Laidlaw's request to vacate the Award under Section 10(a)(3) is thus denied.[10]

### ii. Section 10(a)(4)

In its Petition and supporting motion to vacate, Laidlaw makes fleeting references to Section 10(a)(4) and the claim that the Panel "exceeded their powers." *See* Pet. ¶ 42; Laidlaw

---

[9] *See, e.g.*, FINRA Rule 13604 ("The panel will decide what evidence to admit."); FINRA Rule 13607 ("The panel has the discretion to vary the order in which the hearing is conducted, provided that each party is given a fair opportunity to present its case."); FINRA Rule 13608(a) ("The panel will decide when the record is closed."). In addition, a hearing is not always held in a FINRA arbitration. In a case where a hearing *is* held, like here, FINRA Rule 13608(c) provides that "the panel will generally close the record at the end of the last hearing session, unless the panel requests, or agrees to accept, additional submissions from any party. If so, the panel will inform the parties when the submissions are due and when the record will close." The Panel's handling of the proceeding here was thus entirely proper.

[10] In its reply brief, Laidlaw also argues that the Panel committed misconduct under Section 10(a)(3) by denying Laidlaw's November 30, 2018 motion to adjourn the hearing and compel production of evidence from FINRA Enforcement, which "would have further demonstrated definitively that [Marinaccio] had taken the Confidential Information from Laidlaw to [FSFC]." Laidlaw Reply, Dkt. 19, at 7. The Court need not consider this argument because a court generally "should not 'consider arguments that are raised for the first time in a reply brief.'" *Mateo v. Bristow*, No. 12 Civ. 5052 (RJS), 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n. 5 (2d Cir. 2006)). In any event, this argument is belied by Laidlaw's summation, which relayed the substance of the evidence Laidlaw presumably would have gathered, *see* Laidlaw Summation ¶ 9 (explaining that FSFC had, in response to a regulatory request from FINRA, determined that Marinaccio kept the file on his FSFC computer "in violation of the TRO and the [Panel's] injunction"), and by the fact that this evidence was discussed during Laidlaw's cross-examination of Marinaccio, *see* Hearing Tr. at 47, 55-58.

Moreover, Laidlaw has not established that there was "sufficient cause shown" to postpone the hearing, and therefore the Panel's denial of the request does not rise to the level of "misconduct" warranting vacatur. *See* 9 U.S.C. § 10(a)(3). Although the Panel did not provide specific reasoning when it denied the requested adjournment, *see* Pet. Ex. P (Dec. 4, 2018 Order), Laidlaw acknowledged during the hearing that the Panel "chose to move the case forward [and deny that request], which I understand," Hearing Tr. at 66:18-19. Laidlaw's acknowledgement supports the notion that the Panel had, at the very least, "a barely colorable justification" for its decision. *See Bisnoff v. King*, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001) ("[A]s long as there is at least 'a barely colorable justification' for the arbitrators' decision not to grant an adjournment, the arbitration award should be enforced.") (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)) (additional citations omitted).

12

Mot. at 10. However, neither the Petition nor the motion contain any discussion as to how the Panel exceeded its authority, or why the Award should be vacated on that ground. In its reply brief, Laidlaw appears to contend that the Panel's alleged "misconduct . . . in refusing to hear evidence pertinent and material to the controversy" was somehow indicative of it exceeding its powers. *See* Laidlaw Reply, Dkt. 19, at 4-5. But again, Laidlaw provides no facts or arguments in support of this contention. In reality, Laidlaw's Section 10(a)(4) claim, to the extent it is even properly asserted, appears to merely rehash the misconduct argument discussed above and fails for the same reasons already articulated.

Even assuming, *arguendo*, that Laidlaw properly asserts that the Award should be vacated under Section 10(a)(4), Laidlaw's claim for vacatur under this section fails because Laidlaw has not identified any authority that was improperly exercised by the Panel. "An arbitrator exceeds his authority only by (1) 'considering issues beyond those the parties have submitted for [his] consideration,' or (2) 'reaching issues clearly prohibited by law or by the terms of the parties' agreement.'" *Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49, 51 (2d Cir. 2015) (summary order) (alteration in original) (citing *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("[T]he sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."); *Fidelity Brokerage Servs. LLC v. Deutsch*, 763 F. App'x 104, 105-06 (2d Cir. 2019) (summary order) (rejecting claim that FINRA panel had "exceeded its authority by deciding a never asserted equitable claim" because the panel's stray comments were not in fact the "adjudication of a claim"). In considering whether an arbitration panel has acted outside the scope of its authority such that the Award should be vacated under Section 10(a)(4), the Court "focuses on whether [the Panel] had the power, based on the parties'

submissions or the arbitration agreement, to reach a certain issue, not whether the [Panel] correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002). Because Laidlaw has not established that the Panel considered any issues "beyond those the parties [had] submitted" for consideration, or reached any issues "clearly prohibited by law or by the terms of the parties' agreement," its request to vacate the Award under Section 10(a)(4) is denied.

### iii. Manifest Disregard of the Law

Finally, Laidlaw suggests that the Panel somehow manifestly disregarded the law. *See* Pet. ¶ 43. Again, however, Laidlaw fails to explain in any way—either in its Petition or in its supporting motion to vacate—how or why the Panel "exhibited a manifest disregard of the law." *See id.* Based on these initial submissions, the Court can only assume that Laidlaw's "manifest disregard of the law" theory is premised on the same arguments as its Section 10(a)(3) and 10(a)(4) claims—i.e., that the Panel somehow "manifestly disregarded the law" by concluding the hearing when it did and "curtailing" Laidlaw's cross-examination of Marinaccio. In its reply brief, however, Laidlaw asserts for the first time a different basis for this contention: that the Panel manifestly disregarded the law by denying Laidlaw's claims as to theft and use of confidential trade secrets. *See* Laidlaw Reply at 8-9.

Because Laidlaw failed to raise this argument until its reply brief, the Court need not consider it now. *See ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007). Even if the Court were to consider this claim, however, it would still fail. To vacate the Award for manifest disregard of law, Laidlaw must show that: (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable," and (2) "the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" *Jock*, 646 F.3d at 121 n.1 (quoting *Westerbeke*, 304 F.3d at

209). Courts "will not vacate an award because of 'a simple error in law or a failure by the arbitrators to understand or apply it' but only when a party clearly demonstrates 'that the panel intentionally defied the law.'" *STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389, 393 (2d Cir. 2003)). Laidlaw has failed to identify in the record the "well defined, explicit, and clearly applicable" law pertaining to confidential trade secrets or theft that the Panel was aware of but "decided to ignore . . . or pay no attention to." *Jock*, 646 F.3d at 121 n.1 (citation omitted). There is no support in the record that the Panel manifestly disregard the law in denying Laidlaw's claims as to theft and use of confidential trade secrets, and Laidlaw's request to vacate the Award on this basis is therefore denied.

### B. Marinaccio's Cross-Petition to Confirm the Award

"[A] court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11" of the FAA. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9). Because Laidlaw has not identified a meritorious basis for vacating the Award, Marinaccio's cross-petition to confirm the Award is granted. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 78-79 (2d Cir. 2012) (confirming award because petitioner "has identified no basis . . . for vacating the Award").

### II. MARINACCIO'S ADDTITIONAL MOTIONS

Marinaccio also requests that the Court sanction Laidlaw based on an "inferred . . . intent to harass" and retaliate against him by way of lodging "patently frivolous" and "bad faith claims" to vacate the Award. Resp't Mot. at 17. The Court declines to do so.

"[W]ith respect to factual contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in support." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir.

2014) (citation omitted). "With respect to legal contentions, the operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (citations and alterations omitted). Though unsuccessful, the arguments Laidlaw asserted in its Petition and supporting motion were motivated by a good faith attempt to vacate the Award and were neither based on frivolous legal claims nor supported by wholly baseless factual assertions. Marinaccio's request for sanctions is therefore denied.

Marinaccio also seeks whistleblower protections under 15 U.S.C. § 78u-6(h)(1)(a). Resp't Mot. at 17. Because Marinaccio has not demonstrated that he qualifies as a whistleblower,[11] the Court denies this claim as well.

## CONCLUSION

For the foregoing reasons, Laidlaw's petition to partially vacate the Award is DENIED and Marinaccio's cross-petition to confirm the Award is GRANTED. Marinaccio's remaining motions are DENIED.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 15.

SO ORDERED.

Dated: March 10, 2020
New York, New York

Ronnie Abrams
United States District Judge

---

[11] Among other potential deficiencies, it does not appear that Marinaccio has provided the Securities and Exchange Commission with information related to "a possible securities law violation" in accordance with 15 U.S.C. § 78u-6(h)(1). *See* 17 C.F.R. § 240.21F-2(b).